UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF MICHIGAN

**F I L E D**

DEC 3 0 2025

CLERK'S OFFICE
DETROIT

| | |
|---|---|
| **Michael Koester, individually and on behalf of all others similarly situated,** | |
| Plaintiff, | |
| v. | Case No. 4:25-cv-14106 |
| **FBG Enterprises Opco, LLC,** | Hon. Behm, F. Kay |
| Defendant | |

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

Plaintiff Michael Koester ("Plaintiff" or "Koester") individually and on behalf of all others similarly situated brings this Complaint and Jury Demand against FBG Enterprises Opco, LLC (DBA Fanatics) ("Fanatics" or "Defendants"), and states and alleges as follows:

Introduction

This case is about Defendants' systemic failure to follow the laws of the State of Michigan, Colorado, Indiana, Iowa, Louisiana, and New York with respect to internet sports/casino gambling and in particular user implemented gaming protections.  As a result of these violations of multiple states' laws, Plaintiff and similarly positioned individuals were harmed.

When the Michigan legislature passed the Lawful Internet Gaming Act (Act 152 of 2019), the legislature was very specific in including language meant to protect Michigan patrons using these online

1

casinos and sportsbooks.  While online gambling can be an entertaining pastime, the legislature knew

that there were substantial risks to Michigan residents and protections needed to be in place.

One of those protections that was put in place was Michigan law MI ADC R 432.653(2)(c) which states:

> Once established by an authorized participant and implemented by the internet gaming
> platform, it *must* only be possible to reduce the severity of self-imposed limitations upon
> 24 hours' notice

The states of Colorado, Indiana, Iowa, Louisiana, and New York contain identically worded or

functionally similar statutes regarding patron protections.

Plaintiff (and similarly situated individuals) made pro-active decisions to protect themselves by

establishing gaming limits (including deposit limits, time limits, and wager amount limits), which when

taken in combination with state law, provide robust protections for users.

Defendants deliberately chose not to include these legally mandated patron protections within

their online gaming platform and clearly violated these states' laws.  By not properly implementing

these legally required 24 Hour waiting periods for limit increases once an increase was requested,

Defendants rendered the Plaintiff's established limits and protections functionally useless.

While PointsBet (and subsequently Fanatics Sportsbook) is a gambling platform, this is not a

case about gambling and gambling related losses.  This is a straightforward case about Defendant

violating state laws (and subsequent federal law) by accepting deposits and allowing wagers on its

platform when the law very clearly prohibits such activity.

Plaintiff brings this suit against all defendants for violation of MI regulation MI ADC R

432.653(2)(c) (and similar statutes in Colorado, Indiana, Iowa, Louisiana, and New York), breach of

contract, statutory conversion pursuant to MCL 600.2919a(1)(a) (and similar statutes in Indiana and

Colorado), negligent infliction of emotional distress, and subsequent violations of EFTA (15 USC §1693(m))

Parties

Plaintiff Michael Koester is, and at all times relevant to this action was, a resident and citizen of Michigan, who was able to deposit and wager monies on Defendants' sports betting platform in violation of Michigan law.

Defendant FBG Enterprises Opco, LLC is a Delaware corporation with its headquarters located in Jacksonville, Florida.

Defendant FBG Enterprises Opco, LLC acquired and continued the operations of PointsBet USA in August of 2023 and finalized the deal in April of 2024.

**Fanatics**    About Fanatics    Businesses    Corporate Responsibility    Media Room    Careers    Investor Rel

## POINTSBET ACQUISITION

In August 2023, Fanatics Betting and Gaming acquired the US businesses of PointsBet. The acquisition accelerated the company's growth plans. FBG closed on the final PointsBet state, Illinois, in April 2024. Between August 2023 and April 2024, Fanatics Betting and Gaming has seamlessly migrated PointsBet customers in multiple states and incorporated PointsBet's risk management platform and quantitative driven trading models from Banach Technology into the Fanatics Sportsbook app, enhancing its market offerings.

Jurisdiction and Venue

This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) as to the named Plaintiff and every member of the Classes because the Classes contains more than 100 members, the aggregate amount in controversy exceeds $5 million, and members of the Class reside across the United States and are therefore diverse from Defendants.

This Court has personal jurisdiction over Defendants because Defendants do business in Michigan.

Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

Facts

Plaintiff is a citizen of the state of Michigan and became aware of PointsBet (now Fanatics Sportsbook) in the latter half of 2021.  Plaintiff registered account, including transferring funds to said account, with Defendants' platform at that time.  This account was a financial holding account which held Plaintiff's deposits and withdrawals.

PointsBet (now Fanatics Sportsbook) is an online gaming operator that runs sports betting and casino operations nationally and within Michigan in particular.

Within the Lawful Internet Gaming Act (Act 152 of 2019) the Michigan Legislature established laws to promote patron protections.  The Lawful Internet Gaming Act (Act 152 of 2019) §432.309(1)(f) requires the State to "Develop and enforce requirements for responsible gaming and player protection..."

One of those player protections is mandated in MI ADC R 432.653(2)(c) which states:

> Once established by an authorized participant and implemented by the internet gaming platform, it *must* only be possible to reduce the severity of self-imposed limitations upon 24 hours' notice

The plain meaning of this regulation is clear that once a patron establishes any responsible gaming limitations (deposit, spend, time, wager amount), there must be at least a 24-hour waiting period *after* patron requests an increase to their self-imposed limits before that request can take effect.

These laws are rooted in the goal of protecting gamblers, specifically compulsive gamblers. One of the main tools that all compulsive gamblers are taught in order to fight gambling urges is to *delay* gambling. This 24 hour notice law was intended to provide a safety net to gamblers and provide that all-important delay. Without these protections, gamblers might gamble (And therefore lose) more money than they can reasonably afford to lose. These financial losses can lead to stress, anxiety, health disorders, family conflict, and even so far as the loss of a job or home.

When the Michigan legislature adopted this rule, according to the Michigan Regulatory Impact Statement (2020-10 TY), the Michigan Legislature looked at Indiana and New Jersey as potential models. Based on the adopted language, Michigan copied Indiana's language.

| State | Statute | Language |
|-------|---------|----------|
| Michigan | MI ADC R 432.653(2)(c) | Once established by an authorized participant and implemented by the internet gaming platform, it must only be possible to reduce the severity of self-imposed limitations upon 24 hours' notice |
| Indiana | 68 IAC 27-12-3(b)(3) | Once established by a patron and implemented by the sports wagering system, it must only be possible to reduce the severity of self-imposed limitations upon twenty-four (24) hour notice, or as required by the commission |
| New Jersey | NJ ADC 13:69O-1.4 (n) | An Internet or mobile gaming system shall be capable of allowing a patron to establish the following responsible gaming limits. Any decrease to these limits shall be effective no later than the patron's next log in. Any increase to these limits shall become effective only after the time period of the previous limit has expired |

Michigan specifically adopted the law requiring a 24 Hour waiting period once an increase was requested, not the rule allowing immediate increases once the limit period had passed.

Defendants' platform violates this law. The platform allows for an immediate increase of these user established limits without a 24-hour waiting period.

In order to protect himself when using the platform, Plaintiff established deposit limits, the first of which was established on December 31, 2021. In the subsequent months, when Plaintiff considered adjusting his user defined limits, Defendants' platform did not enforce the 24 hour waiting period, instead allowing immediate increases to limits once it was requested. An example of this is shown below.





But for this immediate ability to increase gaming limits, Plaintiff would have been able to delay the gambling impulse and avoid falling into a destructive gambling spiral which caused him significant harm.

This pattern of establishing limits, and then being able to remove these limits without the required 24-hour waiting period, occurred numerous times between January 2022 and January 2023. During these occurrences, Defendants accepted illegal deposits in excess of $25,000.

According to the User Agreement, Plaintiff has met his procedural requirements by both filing a complaint with PointsBet (now Fanatics Sportsbook) customer service and then subsequently with the Michigan Gaming Control Board before bringing this action.

<u>Industry Practice</u>

Defendants' decision not to enforce a 24 hour waiting period on its platform puts Defendants at odds with industry practice.  Specifically, Defendants' competitor platforms within Michigan all enforce

the plain language of the law and require an at least 24 hour waiting period before a user can increase a limit once a request has bene made.

Examples of FanDuel and BetMGM enforcing this statutory requirement are seen below.





## Confirm your limits

### After the cooldown period

These limits are not yet activated. Be sure to come back after the cooldown period to confirm a pending limit. If you change your mind, you can cancel a pending limit at any time.

Global deposit limits          $1 per day

                               No day limit

September 19, 2022 at 9:05am ET

Global deposit limits          $2 per week

                               No week limit

September 23, 2022 at 9:05am ET

Global deposit limits          $3 per month

                               No month limit

October 17, 2022 at 9:05am ET

**Confirm**



## Settings

**Responsible Gaming Limits**

You can have complete control over your limits and set your limits for some or all of the following options.

Please Note: To better manage your wagering habits, any limit increases will take effect after a waiting period.

Communication Preferences

Change Password

Quick Bet

---

> Please Note: To better manage your wagering habits, any limit increases will take effect after a waiting period.

---

**Wait Period**

Daily Limit: 24 hours from the time of request

Weekly Limit:

    1. If request given on last day of week: Activation on end of next week, i.e. Sunday midnight

    2. If request given on any other day of week: Activation on start of next week, i.e. Sunday midnight.

Monthly Limit:

    1. If request given on last day of month: Activation on end of next month.

    2. If request given on any other day of the month: Activation on start of next month.

Back

11

Tribal casinos within Michigan also follow this law.  Below is an example of Soaring Eagle Casino enforcing this regulation





Defendants' platform is an outlier in not abiding by this law.

<u>PointsBet (Now Fanatics Sportsbook) User Agreement Terms and Conditions</u>

The terms and conditions of the Defendants' platform User Agreement, specifically section 6.12 state "These Terms and Conditions, and the agreement of which they form part of, are governed by the laws of the state in which your account was registered."  Plaintiff registered their account within the state of Michigan (Colorado, Indiana, Iowa, Louisiana, and New York Respectively) and therefor Defendants and their platform is governed by Michigan laws, including MI ADC R 432.653(2)(c).  Failure of Defendants to follow Michigan laws constitutes a breach on their part of Defendants' platform User Agreement.

As mentioned above, Plaintiff has met his procedural requirements by both filing a complaint with PointsBet (now Fanatics Sportsbook) customer service and then subsequently with the Michigan Gaming Control Board before bringing this action.

<u>Similar Statutes</u>

As identified above, Michigan, Colorado, Indiana, Iowa, Louisiana, and New York all have similar or identical statutes.  These are listed below:

| State | Regulation | Language |
|---|---|---|
| Colorado | 1 CO ADC 207-2 (3)(b)(iii) | Once established by a patron and implemented by the sports betting system, it must only be possible to reduce the severity of self-imposed limitations upon 24 hours' notice, or as required by the Commission |
| Indiana | 68 IAC 27-12-3(b)(3) | Once established by a patron and implemented by the sports wagering system, it must only be possible to reduce the severity of self-imposed limitations upon twenty-four (24) hour notice, or as required by the commission |
| Iowa | 491-14.13(99E) (1) (e) | A process for players to easily impose limitations or notifications for deposits and monetary participation in a contest. Limitations must be applied automatically, take effect immediately, and be implemented as indicated by the player. No changes can be made reducing the severity of the self-imposed limitations for at least 24 hours |
| Louisiana | La. Admin Code. tit. 42, Pt VI, § 515 (B)(2) | Players shall have the option to adjust the self-limits to make them more restrictive as often as they choose, but shall not have the option to make the time period or limits less restrictive within 72 hours of setting. Any change must provide a prompt to ensure the player is aware of the change and the player must then confirm the change |
| Michigan | MI ADC R 432.653(2)(c) | Once established by an authorized participant and implemented by the internet gaming platform, it must only be possible to reduce the severity of self-imposed limitations upon 24 hours' notice |
| New York | 9 NY ADC 5403.2 (a)(2) and 9 NY ADC 5330.8 (c)(3) | Any holder of an account voluntarily restricted may have such restrictions removed or modified upon written or in-person request to the racing association or corporation. Pursuant to Racing, Pari-Mutuel Wagering and Breeding Law section 111(3), no request from a person to remove any limit placed on account wagers shall be effective until seven days after such request has been received by the racing association or corporation. |

CLASS ACTION ALLEGATIONS

This action is properly brought as a class action under Federal Rule of Civil Procedure 23(a) for the following reasons:

(a) Numerosity (Fed. R. Civ. P. 23(a)(1)): The proposed Class is so numerous and geographically dispersed throughout the United States that the joinder of all class members is impracticable. While Plaintiff does not know the exact number and identity of the Class, Plaintiff is informed and believe that there are over 100 class members. The precise number of class members may be ascertained through discovery;

(b) Commonality and Predominance (Fed. R. Civ. P. 23(a)(2) and 23(b)(3)): There are questions of law and fact common to the proposed class which predominate over any questions that may affect particular class members. Such common questions of law and fact include, but are not limited to:

i. Whether Defendants violated MI ADC R 432.653(2)(c) (and all other similar statutes);

ii. Whether Defendants breached the Terms and Conditions of the Platform User Agreement with the Class Members;

iii. Whether Defendant's acceptance of deposits and wagers in violation of MI ADC R 432.653(2)(c) (and all other similar statutes) constitutes statutory conversion;

iv. Whether Defendant's acceptance of deposits and wagers in violation of MI ADC R 432.653(2)(c) (and all other similar statutes) constitutes a violation of EFTA (15 USC §1693)

v. Whether the Class members are the type of individuals MI ADC R 432.653(2)(c) (and all other similar statutes) was intended to protect;

vi. Whether Plaintiff and the Classes have been harmed and the proper measure of relief;

vii. Whether Plaintiff and the Classes are entitled to an award of punitive damages, attorneys' fees and expenses against Defendants; and

14

viii. Whether, because of Defendants' misconduct, Plaintiff and the Classes are entitled to equitable relief, and if so, the nature of such relief.

(c) Typicality (Fed. R. Civ. P. 23(a)(3)): Plaintiff's claims are typical of the claims of the Class. Plaintiff and the Class have been injured by the same wrongful practices of Defendants. Plaintiff's claims arise from the same practices and conduct that give rise to the claims of the Classes and are based on the same legal theories;

(d) Adequacy of Representation (Fed. R. Civ. P. 23(a)(4)): Plaintiff will fairly and adequately protect the interests of the Classes in that they have no interests antagonistic to those of the other members of the Classes, and Plaintiff will retain attorneys experienced in consumer class actions and complex litigation as counsel;

This action is properly brought as a class action under Federal Rule of Civil Procedure 23(b) for the following reasons:

(a) Class Action Status (Fed. R. Civ. P. 23(b)(1)): Class action status in this action is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Classes would create a risk of establishing incompatible standards of conduct for Defendants. Class action status is also warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Classes would create a risk of adjudications with respect to individual members of the Classes that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

(b) Declaratory and Injunctive Relief (Fed. R. C. P. 23(b)(2)): Certification under Rule 23(b)(2) is warranted because Defendants acted or refused to act on grounds generally applicable to the

Classes, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Classes as a whole.

(c) Superiority (Fed. R. Civ. P. 23(b)(3)): Certification under Rule 23(b)(3) is appropriate because questions of law or fact common to members of the Classes predominate over any questions affecting only individual members, and class action treatment is superior to the other available methods for the fair and efficient adjudication of this controversy.

(d) The proposed Classes are ascertainable and there is a well-defined community of interest in the questions of law or fact alleged herein since the rights of each proposed Class Member were infringed or violated in the same fashion;

A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

(a)  Given the size of individual Class Member's claims and the expense of litigating those claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendants committed against them and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

(b) This action will promote an orderly and expeditious administration and adjudication of the proposed Classes' claims, economies of time, effort and resources will be fostered and uniformity of decisions will be insured;

(c) Without a class action, Class Members will continue to suffer damages, and Defendant's violations of law will proceed without remedy while Defendants continue to reap and retain the substantial proceeds of their wrongful conduct; and

(d) Plaintiff knows of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.  Defendants have, or have access to,

address information for the Class Members, which may be used for the purpose of providing notice of the pendency of this class action.

(e) Plaintiff seeks damages and equitable relief on behalf of the Classes on grounds generally applicable to the entire proposed Classes.

## Definition of Proposed Class

Plaintiff brings this class action on behalf of the following class (the "Class"): All persons who created an account with PointsBet (now Fanatics Sportsbook), whether via its website, mobile app, or third-party platform, who signed up for PointsBet (now Fanatics Sportsbook) accounts and who were able to increase their self-imposed deposit and gambling limits without the required 24 hour waiting period before the limit increase took effect.  Excluded from the Class are Defendants and their officers and directors at all relevant times, members of Defendants' immediate families and their legal representatives, heirs, successors, and assigns, and any entity in which the Defendants have or had a controlling interest.

Plaintiff reserves the right to amend or modify the Class in connection with a Motion for Class Certification or as the result of discovery.

Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as individual Class Members would use to prove those elements in individual actions alleging the same claims.

## Size of the Proposed Class

Plaintiff does not currently know the exact size of the proposed Class. However, Plaintiff is aware that the Class is so numerous that joinder of the individual Members of the proposed Class is impracticable. On information and belief, the Class includes at least hundreds of people throughout the

states of Michigan, Colorado, Indiana, Iowa, Louisiana, and New York. The number and identities of Class Members are unknown to Plaintiff, but can be ascertained through discovery, including into Defendants' account records, electronic messages, and customer service files, as well as through published notice.

### Adequacy of Representation by the Class Representative

Plaintiff's claims are typical of the Class, and Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests adverse to the interests of the Class and will retain counsel capable of managing this case once certain threshold questions are answered by the court.

### Common Questions of Law and Fact

Questions of law or fact common to the Class exist as to Plaintiff and all Class Members, and these common questions predominate over any questions affecting only individual Class Members. Among the common questions of law and fact are the following:

a. Whether Defendants' online platform functionality for player protections violated Michigan law MI ADC R 432.653(2)(c) (and all similar statutes in Colorado, Indiana, Iowa, Louisiana, and New York);

b. Whether Defendants, by violating MI ADC R 432.653(2)(c) (and all similar statutes in Colorado, Indiana, Iowa, Louisiana, and New York), violated its own platform's User Agreement by not following Michigan (or Colorado, Indiana, Iowa, Louisiana, and New York) law, resulting in a breach of contract;

c. Whether Defendants, by accepting deposits and wagers which is contrary to Michigan (or Colorado, Indiana, Iowa, Louisiana, and New York) law, illegally converted Plaintiff's deposits and wagers for its own purposes, making that conversion pursuant to MCL 600.2919a(1)(a) and treble damages (or similar statutes in Indiana and Colorado);

d. Whether Defendant's acceptance of deposits in violation of MI ADC R 432.653(2)(c) (and all other similar statutes) constitutes a violation of EFTA (15 USC §1693);

e. Whether Defendants owed Plaintiff and the Class a duty, and whether they breached the same; and

f. The amount of damages sustained by Plaintiff and the Class, defined as all deposits and wagers accepted by PointsBet (Now Fanatics) during each offending 24 hour period.


## Typicality of Claims of the Class Representatives

Plaintiff does not anticipate any difficulties in the management of this action as a class action. The Class is ascertainable, and there is a well-defined community of interests in the questions of law and fact alleged because the rights of each Class Member were violated in similar fashion based on Defendants' misconduct. Notice can be provided through records and publication, the cost of which is properly imposed upon Defendants.

Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff and the Class Members. Common questions of law and fact predominate over any individual questions that may arise.

The injuries sustained by Plaintiff and the Class Members flow, in each instance, from a common nucleus of operative facts, i.e., Defendants' violation of Michigan law MI ADC R 432.653(2)(c) (and similar statutes in Colorado, Indiana, Iowa, Louisiana, and New York).

Plaintiff's claims are typical of the claims of the Class they seek to represent. Defendants' uniform obligations relating to patron protections apply equally to Plaintiff and all Class Members. Moreover, the defenses, if any, that will be asserted against Plaintiff's claims are typical of the defenses, if any, that will be asserted against all Class Members' claims.

<u>Nature of the Notice to the Proposed Class</u>

Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. The vast majority of the names and contact information of the Class Members is likely available from Defendants or their partners.

The class definition is carefully drawn such that the Class Members can easily be identified and notified using standard class notification methods, including analysis of Defendants' sales records, mailing, electronic notification, and other methods.

To the extent possible, Plaintiff contemplates providing notice(s) to the Class, as approved by the Court, through the mail or as otherwise directed. In the alternative or in connection with mailed notices, Plaintiff may utilize paid advertising notices online or in media likely to draw the attention of Class Members e.g., specialty magazines. The notice(s) shall, among other things, advise the Class that they shall be entitled to "opt out" of the Class if they so request by a date specified within the notice and that any judgment, whether favorable or not, entered in this case will bind all members except those who affirmatively exclude themselves by timely opting out.


**First Cause of Action**

**Violation of Michigan regulation MI ADC R 432.653(2)(c) and all similar statutes in Colorado, Indiana, Iowa, Louisiana, and New York**


Plaintiff incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

MI ADC R 432.653(2)(c) and all similar statutes (1 CO ADC 207-2 (3)(b)(iii) (Colorado), 68 IAC 27-12-3(b)(3) (Indiana), 491-14.13(99E)(1)(e) (Iowa), La. Admin Code. tit. 42, Pt VI, § 515 (B)(2) (Louisiana),

and 9 NY ADC 5403.2 (a)(2) and 9 NY ADC 5330.8 (c)(3) (New York)) require an at least 24-hour waiting period for any increase in user implemented gaming limits once a request has been initiated. Defendants' gaming platform does not contain these patron protections and is in violation of state law, a violation which caused specific and tangible harm to plaintiff.

As an online gaming operator of the associated states, Defendant has a statutorily established duty to comply with state platform regulations as outlined in MCL 432.307.

Plaintiff and class seek declaratory relief, injunctive relief, nominal damages, punitive damages, and attorney's fees and costs.

## Second Cause of Action

### Negligence per se - Violation of Michigan regulation MI ADC R 432.653(2)(c) and all similar statutes in Colorado, Indiana, Iowa, Louisiana, and New York

Plaintiff incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

MI ADC R 432.653(2)(c) (and similar statutes in Colorado, Indiana, Iowa, Louisiana, and New York) requires a 24 hour waiting period for any increase in user implemented gaming limits once a request has been initiated. Defendants' gaming platform does not contain these patron protections and is in violation of state law, a violation which caused specific and tangible harm to plaintiff.

Defendant had a statutory duty but breached that duty by failing to comply with the law. As a direct result of Defendants' breach of this statutory duty, Plaintiff and the Class suffered injuries in the

form of monetary losses and associated financial distress.  This law was enacted to specifically protect the Plaintiff and similarly positioned individuals from this specific type of harm.

Plaintiff and class seek monetary damages, injunctive relief, restitution, and disgorgement of all monies obtained by means of Defendants' unlawful conduct, interest, and attorney's fees and costs.

### Third Cause of Action
### Breach of Contract

Plaintiff incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

Under the terms and conditions of the User Agreement of the online platform, Defendants state that it will follow the laws of the state of Michigan (and Colorado, Indiana, Iowa, Louisiana, and New York).  By illegally accepting deposits in violation of MI ADC R 432.653(2)(c) (and similar statutes in Colorado, Indiana, Iowa, Louisiana, and New York), Defendants were in violation of their own User Agreement and as such is in breach of contract.  Equity requires the illegal deposits and wagers to be refunded as restitution.

### Fourth Cause of Action
### Statutory Conversion pursuant to MCL 600.2919a(1)(a) and similar statutes in Indiana and Colorado

Plaintiff incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

By accepting deposits and wagers which is contrary to Michigan (and Colorado and Indiana) laws, Defendants illegally converted Plaintiff's deposits and wagers for its own purposes. Pursuant to MCL 600.2919a(1)(a) (and similar statutes in Indiana and Colorado), Plaintiff and class is entitled to

recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees as a result of this illegal conversion.

## Fifth Cause of Action

### Negligent Infliction of Emotional Distress

Plaintiff incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

By negligently accepting deposits and wagers which is contrary to Michigan (and Colorado, Indiana, Iowa, Louisiana, and New York) laws, Defendants caused substantial financial strain on Plaintiff and those similarly situated, which resulted in significant stress on these individuals.  This stress manifests itself in various ways including, cardiovascular deterioration, mental deterioration, fatigue, among others.

Plaintiff and class seek monetary damages, injunctive relief, restitution, and disgorgement of all monies obtained by means of Defendants' unlawful conduct, interest, and attorney's fees and costs.

## Sixth Cause of Action

### Violation of EFTA (Electronic Fund Transfers Act) – 15 USC §1693

Plaintiff incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

By facilitating/accepting electronic deposits into users' monetary deposit accounts contrary to Michigan (and Colorado, Indiana, Iowa, Louisiana, and New York) laws, Defendants violated EFTA by conducting "unauthorized electronic fund transfer." PointsBet (now Fanatics) did not have statutory authority to conduct these transfers.

As authorized within EFTA - 15 USC §1693(m), Plaintiff and class seek monetary damages, injunctive relief, restitution, and disgorgement of all monies obtained by means of Defendants' unlawful conduct, interest, and attorney's fees and costs.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests judgment as follows:

1. That the case be certified as a class action on behalf of the Class, appoint Plaintiff as Class representative, and enable Plaintiff to retain appropriate counsel as Class counsel;

2. A declaration that Defendants' actions, as described herein, violate the law as described herein;

3. An award of injunctive and other equitable relief as necessary to protect the interests of Plaintiff and the Class, including an order prohibiting Defendants from engaging in the unlawful acts described above;

4. An award to Plaintiff and the proposed Class of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all revenues and unjust enrichment that Defendants obtained from Plaintiff and the proposed Class as a result of their unlawful business practices as described herein;

5. An award of all economic, monetary, actual, consequential, compensatory, and treble damages caused by Defendants' conduct;

6. An award of punitive damages;

7. An award of reasonable expenses of attorney's fees;

8. An award of pre and post-judgment interest, to the extent allowable; and

9. For such further relief that the Court may deem just and proper.

Respectfully Submitted,



Michael Koester

12/30/2025

650 Birch Ln

Grosse Pointe Woods, MI 48236

mkoest@gmail.com

313-655-4190